FILED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| DAVID PAYNE, on behalf of himself and all others similarly situated, | ) ) ) ) ) | 2013 JUN 21  P 2: 18 CLERK US DISTRICT COURT ALEXANDRIA, VIRGINIA |
| Plaintiff, | ) ) | Civil Action No. 1: 13cv 761 LMB/IDD |
| vs. | ) ) | **JURY TRIAL DEMANDED** |
| SMITHFIELD FOODS, INC., SUN MERGER SUB, INC., JOSEPH W. LUTER, III, C. LARRY POPE, HON. CAROL T. CRAWFORD, RICHARD T. CROWDER, MARGARET G. LEWIS, WENDELL H. MURPHY, DAVID C. NELSON, FRANK S. ROYAL, M.D., JOHN T. SCHWIETERS and HON. PAUL S. TRIBLE, JR., | ) ) ) ) ) ) ) ) ) ) | **CLASS ACTION** |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff David Payne ("Plaintiff"), by his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

1.      Plaintiff brings this shareholder class action on behalf of himself and all other public shareholders of Smithfield Foods, Inc. ("Smithfield" or the "Company") against the Company's Board of Directors (the "Board" or the "Individual Defendants") seeking equitable relief for their violations of Rule 14(a) promulgated under the Securities Exchange Act of 1934 ("Rule 14(a)"), and for their breaches of fiduciary duty arising out of the attempt to sell the Company to Shuanghui International Holdings Limited and Sun Merger Sub, Inc. (the "Merger

1

Sub") (collectively "Shuanghui"), by means of an unfair process and for an unfair price (the "Proposed Acquisition" and/or "Merger").

2.      Under the terms of a definitive merger agreement announced on May 28, 2013 (the "Merger Agreement"), at the effective time, each share of the Company's common stock, par value $0.50 per share, issued and outstanding immediately prior to the effective time will be converted into the right to receive $34.00 in cash. The Proposed Acquisition has a total approximate value of $7.1 billion and is expected to occur close in the second half of 2013.

3.      Upon closing of the transaction, Smithfield's common stock will cease to be publicly traded. The Company will be a wholly-owned independent subsidiary of Shuanghui International Holdings Limited, operating as Smithfield Foods. C. Larry Pope will continue as President and Chief Executive Officer of Smithfield, and Smithfield's management team will continue in place after the transaction.

4.      Moreover, on May 28, 2013, in connection with the Merger, the Smithfield Board and the Compensation Committee of the Smithfield Board approved a retention bonus program (the "Retention Bonus Program") for certain of Smithfield's officers and other key employees. The Retention Bonus Program provides special retention awards to aid in the retention of certain key employees and includes the executive officers of Smithfield. The Retention Bonus Program was established as the byproduct of Shuanghui's requirements that Smithfield ensure the retention of the CEO, the senior executives and other executive officers through and beyond the effective time. In order to do so, Shuanghui necessitated that Smithfield award a bonus significant enough to ensure the retention of these Smithfield employee/officers. The aggregate amount of the retention bonuses that may be payable to the CEO and Senior Executives is $23,900,000 and is reflected in the table below:

| | |
|---|---|
| C. Larry Pope | $8,300,000 |
| George H. Richter | $4,500,000 |
| Robert W. Manly IV | $3,800,000 |
| Dennis H. Treacy | $2,000,000 |
| Dhamu Thamodaran | $2,400,000 |
| Dariusz Nowakowski | $2,900,000 |

A total of approximately 50 other executive officers and key employees of Smithfield may be entitled to receive retention bonuses in connection with the Merger. The aggregate amount that will be made available for the retention bonuses to these other officers and employees will be $23,952,075.

5.      In addition, pursuant to the Company's Executive Severance Plan, a participant is entitled to certain payments and other benefits in the event the participant's employment is terminated by Smithfield other than for cause, death or disability or the participant resigns for good reason during the period of a "potential change in control" or within two years following a "change in control," as such terms are defined in the Executive Severance Plan. The cash amounts that would be payable to Smithfield's executive officers if the executive officer became entitled to benefits under the Executive Severance Plan in connection with the merger, including both the lump-sum payment and pro-rata bonus, are shown below:

**Potential Cash Severance Payments to Executive Officers**

| Executive Officer | Potential Cash Severance Payments |
|---|---|
| C. Larry Pope | $19,665,543 |
| Robert W. Manly, IV | $ 8,871,926 |
| George H. Richter | $10,534,765 |
| Joseph B. Sebring | $ 4,663,170 |

| | |
|---|---|
| Joseph W. Luter, IV | $ 6,474,521 |
| Michael E. Brown | $ 6,474,521 |
| Timothy O. Schellpepper | $ 6,474,521 |
| Dhamu Thamodaran | $ 5,549,589 |
| Dennis H. Treacy | $ 4,624,658 |
| **Total** | **$73,333,214** |

6.      In addition, pursuant to the Merger Agreement, at the effective time, each outstanding option to purchase shares of the Company's common stock, performance stock unit ("PSU") and executive stock purchase plan unit ("ESPP"), whether vested or unvested, will be cancelled and the holder thereof will be entitled to receive the Merger consideration. As such, holders of such options will receive immediate liquidity for their previously illiquid stock holdings. The following table sets forth the amounts payable with respect to the unvested Smithfield stock options, PSUs and Match ESPP Stock Units to each of the executive officers as described above:

**Payments for Unvested Equity Awards Table**

| Executive Officer | Aggregate Number of Unvested Stock Options (#) | Aggregate Amount Payable for Unvested Stock Options ($) | Aggregate Number of Unvested PSUs (#) | Aggregate Amount Payable for Unvested PSUs ($) | Aggregate Number of Unvested Match ESPP Stock Units (#) | Aggregate Amount Payable for Match ESPP Stock Units ($) | Total Amount Payable for Unvested Equity Awards ($) |
|---|---|---|---|---|---|---|---|
| C. Larry Pope | 33,333 | 401,996 | 536,400 | 18,237,600 | 0 | 0 | 18,639,596 |
| Robert W. Manly, IV | 16,667 | 201,004 | 267,400 | 9,091,600 | 25,178 | 856,052 | 10,148,656 |
| George H. Richter | 13,333 | 160,796 | 29,000 | 986,000 | 37,455 | 1,273,470 | 2,420,266 |
| Joseph B. Sebring | 8,333 | 100,496 | 13,600 | 462,400 | 46,114 | 1,567,876 | 2,130,772 |
| Joseph W. Luter, IV | 8,333 | 100,496 | 14,400 | 489,600 | 49,896 | 1,696,464 | 2,286,560 |
| Michael E. Brown | 8,333 | 100,496 | 12,000 | 408,000 | 18,727 | 636,718 | 1,145,214 |
| Timothy O. Schellpepper | 8,333 | 100,496 | 13,600 | 462,400 | 22,747 | 773,398 | 1,336,294 |
| Dhamu Thamodaran | 6,667 | 80,404 | 41,600 | 1,414,400 | 43,270 | 1,471,480 | 2,966,284 |
| Dennis H. Treacy | 5,000 | 60,300 | 40,000 | 1,360,000 | 14,691 | 499,494 | 1,919,794 |

7.      In sum, Smithfield's senior executive officers, including defendant C. Larry Pope, will receive millions of dollars in the form of special and unique compensation upon the

consummation of the Merger. The following table sets forth the potential merger-related payments payable to Smithfield's named executive officers in connection with the merger. This table does not include the value of benefits which the named executive officers already have a vested right to receive without regard to the occurrence of the merger:

### Potential Merger-Related Payments to Named Executive Officers Table

| Executive | Cash (1) | Equity (2) | Pension/NQDC (3) | Perquisites/ Benefits (4) | Tax Reimbursements (5) | Other | Total |
|---|---|---|---|---|---|---|---|
| C. Larry Pope | $27,965,543 | $18,639,596 | $ — | $ 21,600 | $ — | $— | $46,626,739 |
| Robert W. Manly, IV | $12,671,926 | $10,148,656 | $ — | $ 21,600 | $ — | $— | $22,842,182 |
| George H. Richter | $15,034,765 | $ 2,420,266 | $ — | $ 21,600 | $ — | $— | $17,476,631 |
| Joseph B. Sebring | $ 4,663,170 | $ 2,130,772 | $ — | $ 21,600 | $ — | $— | $ 6,815,542 |
| Joseph W. Luter, IV | $ 6,474,521 | $ 2,286,560 | $ — | $ 21,600 | $ — | $— | $ 8,782,681 |

8.     Compounding the harm associated with the Board's other breaches of fiduciary duty is its failure to disclose all material information to Smithfield shareholders, which will prevent them from making an informed decision with respect to the Proposed Acquisition. Specifically, on June 18, 2013, Smithfield filed a Schedule 14A Preliminary Proxy Statement, (the "Proxy Statement" and/or "Proxy"), with the SEC in connection with the Proposed Acquisition. The Proxy Statement, however, fails to provide the Company's shareholders with all material information concerning the Proposed Acquisition, thereby precluding them from casting an informed vote regarding the Proposed Acquisition or making an informed decision as to whether they should elect to pursue an appraisal remedy.

9.     As alleged herein, the Individual Defendants have breached their fiduciary duties of loyalty and due care by, *inter alia*, agreeing to sell Smithfield for inadequate consideration without ensuring that Plaintiff and Class members (defined below) would obtain adequate and

fair consideration under the circumstances. Shuanghui aided and abetted the Individual Defendants' breaches of fiduciary duty.

10.     Plaintiff seeks to enjoin the Proposed Acquisition or, alternatively, to recover damages in the event that the Proposed Acquisition is consummated.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of Rule 14(a). This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because complete diversity exists between Plaintiff and each defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.     Venue is proper because Defendants reside, are found, have agents, and regularly transact business in this District as provided in 28 U.S.C. § 1391(b) and (c).

13.     This Court has personal jurisdiction over Defendants because they are located in, transacted business in, or had substantial contacts with this District.

## THE PARTIES

14.     Plaintiff David Payne is, and has been at all relevant times a shareholder of Smithfield.  Plaintiff is a citizen of the state of Florida.

15.     Smithfield is a $13 billion global food company and the world's largest pork processor and hog producer. In the United States, the company is also the leader in numerous packaged meats categories with popular brands including Smithfield®, Eckrich®, Farmland®, Armour®, Cook's®, Gwaltney®, John Morrell®, Kretschmar®, Curly's®, Carando®, Margherita®, and Healthy Ones®.  The Company is a citizen of the state of Virginia as it is

6

incorporated in Virginia and headquartered at 200 Commerce St., Smithfield, VA. Smithfield's
common stock is traded on NYSE under the symbol "SFD."

16.     Defendant Joseph W. Luter, III, ("Luter") has served as the Chairman of the
Board of Smithfield since 1975. Luter previously served as consultant to the Company from
August 2006 to August 2010 and Chairman of the Board and Chief Executive Officer of the
Company from 1975 to 2006. Luter also serves as Chairman of the Executive Committee. Luter
owns stock valued at $30 million based on the $34-per-share offer price. In addition, Smithfield
Executive Vice President Joseph W. Luter IV, son of defendant Luter, will receive in excess of
$8.7 million dollars in Merger-related payments upon consummation of the Proposed
Acquisition. Upon information and belief, Luter is a citizen of the state of Virginia.

17.     Defendant C. Larry Pope ("Pope") has served as President, Chief Executive
Officer and director of the Company since 2006. Pope previously served as President and Chief
Operating Officer from 2001 to 2006, and Vice President and Chief Financial Officer from 2000
to 2001. Pope is a member of the Executive Committee. Pope will continue as President and
Chief Executive Officer of Smithfield following consummation of the Merger. Prior to the
execution of the Merger Agreement, the Company Board and Compensation Committee of the
Board approved the Retention Bonus Program in connection with the Merger pursuant to which
Pope will be paid $8.3 million in four installments. In addition, Pope owns stock valued at $25.4
million based on the $34-per-share offer price. Pope will receive more than $46 million dollars
in Merger-related payments upon consummation of the Proposed Acquisition. Upon information
and belief, Pope is a citizen of the state of Virginia.

18.     Defendant Carol T. Crawford ("Crawford") has served as a director of the
Company since 2000. Crawford serves as Chair of the Sustainability, Community and Public

Affairs Committee and as a member of the Compensation Committee. Upon information and belief, Crawford is a citizen of the state of Virginia.

19.     Defendant Richard T. Crowder ("Crowder") has been a director of the Company since 2011. Crowder is a member of the Nominating/Governance Committee. Upon information and belief, Crowder is a citizen of the state of Virginia.

20.     Defendant Margaret G. Lewis ("Lewis") has been a director of the Company since 2011. Lewis is a member of the Audit Committee. Upon information and belief, Lewis is a citizen of the state of Virginia.

21.     Defendant Wendell H. Murphy ("Murphy") has been a director of the Company since 2000. Murphy is a member of the Executive and Sustainability, Community and Public Affairs Committees. Upon information and belief,, Murphy is a citizen of the state of North Carolina.

22.     Defendant David C. Nelson ("Nelson") has been a director of the Company since 2008. Nelson is a member of the Compensation and Sustainability, Community and Public Affairs Committees. Upon information and belief, Nelson is a citizen of the state of Illinois.

23.     Defendant Frank S. Royal ("Royal") has been a director of the Company since 2002. Royal is Chairman of the Compensation Committee and a member of the Audit and Nominating/Governance Committees. Upon information and belief, Royal is a citizen of the state of Virginia.

24.     Defendant John T. Schwieters ("Schwieters") has been a director of the Company since 2001. Schwieters is Chairman of the Audit Committee and a member of the Nominating/Governance Committee. Upon information and belief, Schwieters is a citizen of the state of Maryland.

8

25.     Defendant Paul S. Trible, Jr. ("Trible") has been a director of the Company since 2007.  Trible is Chairman of the Nominating/Governance Committee and a member of the Sustainability, Community and Public Affairs Committee.  Upon information and belief, Trible is a citizen of the state of Virginia.

26.     Individual Defendants Luter, Pope, Crawford, Crowder, Lewis, Murphy, Nelson, Royal, Schweiters and Trible are, and at all times relevant hereto have been, directors of Smithfield, and are referred to herein as "Individual Defendants" or "Director Defendants."

27.     The Director Defendants, by reason of their corporate directorships and/or executive positions, are fiduciaries to and for the Company's stockholders, which fiduciary relationship required them to exercise their best judgment, and to act in a prudent manner and in the best interests of the company's stockholders.

28.     Defendant Sun Merger Sub, Inc., is a citizen of Virginia, incorporated in Virginia and wholly-owned subsidiary of Shuanghui International Holdings Limited.  Shuanghui International Holdings Limited, a corporation formed under the laws of the Cayman Islands, is a Hong Kong-based holding company, which owns a variety of global businesses that include food, logistics and flavoring products.  Shuanghui International and its subsidiaries are the majority shareholders of China's largest meat processing enterprise, which is publicly traded as Henan Shuanghui Investment & Development on the Shenzhen Stock Exchange (SZSE: 000895).

## SUBSTANTIVE ALLEGATIONS

29.     On May 29, 2013, Smithfield and Shuanghui jointly announced the Proposed Acquisition.  The press release states in relevant part:

SMITHFIELD, Va. and HONG KONG – May 29, 2013 – Smithfield Foods, Inc. (NYSE: SFD) and Shuanghui International Holdings Limited today announced

9

that they have entered into a definitive merger agreement that values Smithfield at approximately US$7.1 billion, including the assumption of Smithfield's net debt. Shuanghui International is the majority shareholder of Henan Shuanghui Investment & Development Co. (SZSE: 000895), which is China's largest meat processing enterprise and China's largest publicly traded meat products company as measured by market capitalization.

Under the terms of the agreement, which has been unanimously approved by the boards of directors of both companies, Shuanghui will acquire all of the outstanding shares of Smithfield for US$34.00 per share in cash. The purchase price represents a premium of approximately 31% over Smithfield's closing stock price on May 28, 2013, the last trading day prior to today's announcement.

"This is a great transaction for all Smithfield stakeholders, as well as for American farmers and U.S. agriculture," said C. Larry Pope, president and chief executive officer of Smithfield. "We have established Smithfield as the world's leading and most trusted vertically integrated pork processor and hog producer, and are excited that Shuanghui recognizes our best-in-class operations, our outstanding food safety practices and our 46,000 hard-working and dedicated employees. It will be business as usual – only better – at Smithfield. We do not anticipate any changes in how we do business operationally in the United States and throughout the world. We will become part of an enterprise that shares our belief in global opportunities and our commitment to the highest standards of product safety and quality. With our shared expertise and leadership, we look forward to accelerating a global expansion strategy as part of Shuanghui."

"We are pleased to have reached this agreement with Smithfield, which represents a historic opportunity for both companies and their stakeholders," said Shuanghui chairman Wan Long. "Shuanghui is a leading pork producer in China and a pioneer in the Chinese meat processing industry with over 30 years of history. Smithfield is a leader in our industry and together we will be able to meet the growing demand in China for pork by importing high-quality meat products from the United States, while continuing to serve markets in the United States and around the world. The combination creates a company with an unmatched set of assets, products and geographic reach."

Mr. Wan continued: "The acquisition provides Smithfield the opportunity to expand its offering of products to China through Shuanghui's distribution network. Shuanghui will gain access to high-quality, competitively-priced and safe U.S. products, as well as Smithfield's best practices and operational expertise. We were especially attracted to Smithfield for its strong management team, leading brands and vertically integrated model. We look forward to working with Larry Pope and the many talented employees at Smithfield to grow the combined company as a leading global pork and processed meat producer with the same vision and values of providing high-quality and safe products to consumers."

Shuanghui is committed to continuing the long-term growth of Smithfield, and continuing to work with American farmers, producers and suppliers who have been critical to Smithfield's success.

Shuanghui will continue its long-term strategy and vision to become a global leader with strict adherence to the highest standards of quality control and safety compliance. Its agreement to acquire Smithfield is fully aligned with this focus. Shuanghui will maintain the excellence in Smithfield's brands and strategic priorities. Together, Shuanghui and Smithfield will enhance their competitiveness, contributing to a more secure future for the Chinese and U.S. pork industries.

Mr. Pope added, "This transaction provides Smithfield shareholders with significant and immediate cash value for their investment, and ensures that Smithfield will continue to execute on its strategic priorities while maintaining our brand excellence, community involvement, and our commitment to environmental stewardship and animal welfare. Our board of directors is pleased with the outcome of the process we followed leading to this transaction, and we unanimously believe that this combination with Shuanghui is in the best interests of the Company, our shareholders and all Smithfield stakeholders."

30.     As set forth herein, the Company's recent financial performance, position as a leader in its industry and valuable operating divisions all establish the Merger consideration to be unfair and inadequate if Smithfield shareholders are to have their equity in the Company extinguished as is contemplated by the Proposed Acquisition.

31.     Significantly, on the day the Merger was announced, Smithfield's stock had already appreciated over 21% in 2013 on the heels of the Company's stellar financial performance.  For example, on March 7, 2013, Smithfield reported strong fiscal 2013 third quarter results, driven by growth in packaged meats and solid contributions from international operations.  Smithfield achieved volume growth in nine of its twelve core brands in the third quarter.  "Our *Smithfield* bacon, *Eckrich* dinner sausage and *Armour* dry sausage all achieved double-digit growth.  We gained market share in the bacon, dinner sausage, dry sausage and ham steak categories.  We were also very successful in broadening distribution of our core brands in a

number of key product categories including bacon, dinner sausage, deli meats, dry sausage and ham steaks," said Pope.

32.     At the time of the Q3 2013 results, Pope was optimistic that the momentum generated by the Company over past year would continue in Q4 2012 and beyond, "Given ongoing positive fundamentals in Eastern Europe, we are confident that our international segment can continue to deliver operating profit at the high end of the normalized range in fiscal 2013 and 2014," he remarked.  Pope concluded, "We are excited about the growth prospects for this company as we continue to transform Smithfield into a more value-added consumer packaged meats company. We expect solid earnings in fiscal 2013 and look forward to even stronger results next year."

33.     In announcing the Company's Q4 2013 and full year 2013 financial results, Pope's statements above proved prophetic.  Sales for the fourth quarter of fiscal 2013 were $3.3 billion, up 3%.  "Driven by both top and bottom line growth in packaged meats, these earnings reflect our continued transformation into a more value-added consumer packaged meats company.  For the full year, packaged meats operating profit increased nearly $70 million, or 17%, year over year and volume was up 4%. Our core brand volume grew even more substantially, up 5%," said Pope.  Smithfield continued to deliver consistent growth in its packaged meats business in fiscal 2013, with increased volume and market share and broader distribution of its core brands. Packaged meats sales dollars and volume grew across all trade channels and in eight of the company's 12 core brands. "Double-digit gains were realized for *Smithfield* bacon, *Armour* dry sausage, and *Smithfield* and *Farmland* marinated pork. In the deli channel, our *Eckrich* deli meats also finished the year up double-digits," Pope commented. Market share improved in bacon, cooked dinner sausage, dry sausage and marinated pork. In

addition, the Company broadened distribution of its core brands in a number of key product categories, including cooked dinner sausage, deli meats, dry sausage, marinated pork, packaged lunchmeat and portable lunches.

34.     Plaintiff is not alone in his belief that the consideration offered in the Proposed Acquisition is inadequate. On June 17, 2013, Starboard Value LP ("Starboard"), a large shareholder of Smithfield with beneficial ownership of approximately 5.7% of the outstanding common stock of the Company, sent a letter to the Board wherein Starboard estimated the Company's "worth between $9 billion and $10.8 billion after tax, or approximately $44 to $55 per share, representing an approximate 29%-62% premium to the $34 per share Shuanghui deal." Starboard's "research indicated that the sum-of-the-parts value of the Company's operating divisions […] was well in excess of the then-current trading price of Smithfield," and "separation of these businesses was entirely feasible and could be accomplished without significant tax leakage." According to the Starboard analysis, the June 17, 2013 letter states, in pertinent part, the following (a copy of the entire letter is attached as Exhibit 1):

> Dear Members of the Board,
>
> Starboard Value LP, together with its affiliates ("Starboard"), currently owns securities representing beneficial ownership of approximately 5.7% of Smithfield Foods, Inc. ("Smithfield" or the "Company"). We have been a shareholder of Smithfield since March 2013, several months prior to the announcement on May 29, 2013 that Smithfield and Shuanghui International Holdings Limited ("Shuanghui") entered into a definitive merger agreement valuing Smithfield at approximately $7.4 billion, or $34.00 per share (the "Proposed Merger"). We initially invested in Smithfield because we believed that the Company was significantly undervalued and that there were opportunities within the control of management and the Board of Directors (the "Board") to substantially improve value for the benefit of shareholders.
>
> *     *     *

14

We believe the Proposed Merger goes a long way towards closing the gap between the pre-deal market value of Smithfield and the intrinsic value of the business. However, we believe the Proposed Merger still significantly understates a conservative sum-of-the-parts valuation of the Company, which we estimate to be worth between $9 billion and $10.8 billion after tax, or approximately $44 to $55 per share, representing an approximate 29%-62% premium to the $34 per share Shuanghui deal.

Our sum of the parts analysis is based upon publicly available information, our knowledge of the industry, and extensive due diligence, but there may be information within the Company's possession, such as tax basis, and other attributes which would likely impact our analysis. As shown in the table below, we assume that upon acquiring Smithfield, a potential acquiror would sell both the Hog Production and International divisions. We believe this would result in a conservatively estimated tax liability of $425 million to $935 million. If a proposed acquiror does not sell all of these two divisions, then any tax liability would be lower.

*    *    *

It is our belief that the divisions of Smithfield are easily separable and had the Company explored a sale of these businesses in separate transactions, shareholders may have received far more value than the $34 per share consideration contemplated by the Proposed Merger. We question whether the Board gave sufficient consideration to a sale of the divisions in separate transactions, or whether it focused primarily on an all-cash transaction for the Company as a whole, which we believe would entail a much more limited universe of potential buyers.

It is incumbent upon Starboard to fully explore whether strategic or financial buyers are interested in the Company's operating divisions in order to confirm our belief that the sum of Smithfield's parts are indeed greater than its whole. We are therefore looking to identify and engage in discussions with any third parties who may be interested in acquiring any of Smithfield's operating units. While we recognize the Company's limitations under the Merger Agreement, if interested acquirors emerge whose offers for the Company's individual units represent in the aggregate superior value than the Proposed Merger, we believe the Board must consider a Change in Company Board Recommendation under the terms of the Merger Agreement.

*    *    *

We Believe the Sum of Smithfield's Parts in an Alternative Transaction Structure is Greater than the $34 Cash Consideration under the Proposed Merger

We believe the Proposed Merger significantly understates a conservative sum-of-the-parts valuation of Smithfield, which we estimate to be worth between $9 billion and $10.8 billion after tax leakage, or approximately $44 to $55 per share, representing an approximate 29%-62% premium to the Shuanghui deal.

We question whether the Board conducted a full strategic process to determine whether a piece-by-piece sale of the Company's valuable, yet disparate, operating divisions could have provided greater value to shareholders than the Proposed Merger.

To be clear, the purpose of our letter is not necessarily to come out in opposition to the Proposed Merger. As stated above, we believe the Proposed Merger goes a long way towards unlocking the intrinsic value of the Company for shareholders. We would be remiss, however, to let an opportunity slip by to determine whether the Company could realize even greater value for shareholders. We believe our involvement will be welcomed and supported by the numerous Smithfield investors who, like us, recognize the additional value that the Company's assets have over and above the current offer. Lending further credence to our views, we note that on the day the deal with Shuanghui was announced, the market capitalization of Henan Shuanghui, China's largest meat processing company majority owned by Shuanghui International, *increased* by approximately $1.2 billion.

### Conclusion

As one of Smithfield's largest beneficial owners, our interests are aligned with those of all shareholders. While the current transaction represents a premium to the historical Smithfield trading range based on management's current standalone plan, we believe superior value may be achieved through a transaction based on the considerable value of each of the Company's divisions. We look forward to determining whether there are potential interested parties who could facilitate a sum-of-the-parts transaction structure that could deliver even greater value for shareholders than the Proposed Merger at this time. By sending this letter to the Board, Starboard is not taking any position or making any recommendation on the Proposed Merger and reserves all rights related thereto.

Best Regards,

Jeffrey C. Smith
Managing Member
Starboard Value LP

35.     Clearly, based on the above, the Proposed Acquisition will allow Shuanghui to purchase Smithfield at an unfairly low price while availing itself of Smithfield's significant value and upside or long-term potential.

*Insiders Receive Special Benefits from the Proposed Acquisition*

36.     Moreover, certain of the Individual Defendants and Smithfield's senior executives stand to benefit from the Proposed Acquisition in ways that are not shared equally with Plaintiff and the Class.  Upon closing of the transaction, Smithfield's common stock will cease to be publicly traded. The Company will be a wholly-owned independent subsidiary of Shuanghui International Holdings Limited, operating as Smithfield Foods.  However defendant Pope will continue as President and Chief Executive Officer of Smithfield, and Smithfield's management team will also remain in place after the transaction is consummated.

37.     Moreover, on May 28, 2013, in connection with the Merger, the Smithfield Board and the Compensation Committee of the Smithfield Board approved a retention bonus program (the "Retention Bonus Program") for certain of Smithfield's officers and other key employees. The Retention Bonus Program provides special retention awards to aid in the retention of certain key employees and includes the executive officers of Smithfield.  The Retention Bonus Program was established as the byproduct of Shuanghui's requirements that Smithfield ensure the retention of the CEO, the senior executives and other executive officers through and beyond the effective time.  In order to do so, Shuanghui necessitated that Smithfield award a bonus significant enough to ensure the retention of these Smithfield employee/officers. The aggregate amount of the retention bonuses that may be payable to the CEO and Senior Executives is $23,900,000 and is reflected in the table below:

16

| | |
|---|---|
| C. Larry Pope | $8,300,000 |
| George H. Richter | $4,500,000 |
| Robert W. Manly IV | $3,800,000 |
| Dennis H. Treacy | $2,000,000 |
| Dhamu Thamodaran | $2,400,000 |
| Dariusz Nowakowski | $2,900,000 |

A total of approximately 50 other executive officers and key employees of Smithfield may be entitled to receive retention bonuses in connection with the Merger. The aggregate amount that will be made available for the retention bonuses to these other officers and employees will be $23,952,075.

38.    In addition, pursuant to the Company's Executive Severance Plan, a participant is entitled to certain payments and other benefits in the event the participant's employment is terminated by Smithfield other than for cause, death or disability or the participant resigns for good reason during the period of a "potential change in control" or within two years following a "change in control," as such terms are defined in the Executive Severance Plan. The cash amounts that would be payable to Smithfield's executive officers if the executive officer became entitled to benefits under the Executive Severance Plan in connection with the merger, including both the lump-sum payment and pro-rata bonus, are shown below:

**Potential Cash Severance Payments to Executive Officers**

| Executive Officer | Potential Cash Severance Payments |
|---|---|
| C. Larry Pope | $19,665,543 |
| Robert W. Manly, IV | $ 8,871,926 |
| George H. Richter | $10,534,765 |
| Joseph B. Sebring | $ 4,663,170 |

17

| | |
|---|---|
| Joseph W. Luter, IV | $ 6,474,521 |
| Michael E. Brown | $ 6,474,521 |
| Timothy O. Schellpepper | $ 6,474,521 |
| Dhamu Thamodaran | $ 5,549,589 |
| Dennis H. Treacy | $ 4,624,658 |
| **Total** | **$73,333,214** |

39.     Moreover, pursuant to the Merger Agreement, at the effective time of the Merger, each outstanding option to purchase shares of the Company's common stock, performance stock unit ("PSU") and executive stock purchase plan unit ("ESPP"), whether vested or unvested, will be cancelled and the holder thereof will be entitled to receive the Merger consideration. As such, holders of such options will receive immediate liquidity for their previously illiquid stock holdings. The following table sets forth the amounts payable with respect to the unvested Smithfield stock options, PSUs and Match ESPP Stock Units to each of the executive officers as described above:

**Payments for Unvested Equity Awards Table**

| Executive Officer | Aggregate Number of Unvested Stock Options (#) | Aggregate Amount Payable for Unvested Stock Options ($) | Aggregate Number of Unvested PSUs (#) | Aggregate Amount Payable for Unvested PSUs ($) | Aggregate Number of Unvested Match ESPP Stock Units (#) | Aggregate Amount Payable for Match ESPP Stock Units ($) | Total Amount Payable for Unvested Equity Awards ($) |
|---|---|---|---|---|---|---|---|
| C. Larry Pope | 33,333 | 401,996 | 536,400 | 18,237,600 | 0 | 0 | 18,639,596 |
| Robert W. Manly, IV | 16,667 | 201,004 | 267,400 | 9,091,600 | 25,178 | 856,052 | 10,148,656 |
| George H. Richter | 13,333 | 160,796 | 29,000 | 986,000 | 37,455 | 1,273,470 | 2,420,266 |
| Joseph B. Sebring | 8,333 | 100,496 | 13,600 | 462,400 | 46,114 | 1,567,876 | 2,130,772 |
| Joseph W. Luter, IV | 8,333 | 100,496 | 14,400 | 489,600 | 49,896 | 1,696,464 | 2,286,560 |
| Michael E. Brown | 8,333 | 100,496 | 12,000 | 408,000 | 18,727 | 636,718 | 1,145,214 |
| Timothy O. Schellpepper | 8,333 | 100,496 | 13,600 | 462,400 | 22,747 | 773,398 | 1,336,294 |
| Dhamu Thamodaran | 6,667 | 80,404 | 41,600 | 1,414,400 | 43,270 | 1,471,480 | 2,966,284 |
| Dennis H. Treacy | 5,000 | 60,300 | 40,000 | 1,360,000 | 14,691 | 499,494 | 1,919,794 |

40.     In sum, Smithfield's senior executive officers, most notably defendant Pope, will receive millions of dollars in the form of special and unique compensation upon the

18

consummation of the Merger. The following table sets forth the potential merger-related payments payable to Smithfield's named executive officers in connection with the merger. This table does not include the value of benefits which the named executive officers already have a vested right to receive without regard to the occurrence of the merger:

**Potential Merger-Related Payments to Named Executive Officers Table**

| Executive | Cash (1) | Equity (2) | Pension/NQDC (3) | Perquisites/ Benefits (4) | Tax Reimbursements (5) | Other | Total |
|---|---|---|---|---|---|---|---|
| C. Larry Pope | $27,965,543 | $18,639,596 | $ — | $ 21,600 | $ — | $— | $46,626,739 |
| Robert W. Manly, IV | $12,671,926 | $10,148,656 | $ — | $ 21,600 | $ — | $— | $22,842,182 |
| George H. Richter | $15,034,765 | $ 2,420,266 | $ — | $ 21,600 | $ — | $— | $17,476,631 |
| Joseph B. Sebring | $ 4,663,170 | $ 2,130,772 | $ — | $ 21,600 | $ — | $— | $ 6,815,542 |
| Joseph W. Luter, IV | $ 6,474,521 | $ 2,286,560 | $ — | $ 21,600 | $ — | $— | $ 8,782,681 |

41.     Thus, the Proposed Acquisition will bestow upon Smithfield's executive officers millions of dollars of unique compensation that creates a substantial conflict of interest and calls into question the Company's motives for entering into the Proposed Acquisition as opposed to a break up transaction such as indicated by Starboard Value that would generate more value for Smithfield shareholders but may not allow the defendants to cash out the tens of millions indicated herein.

*Preclusive Deal Mechanisms*

42.     The Merger Agreement contains certain provisions that unfairly favor Shuanghui by making an alternative transaction either prohibitively expensive or otherwise impossible. For example, the Merger Agreement contains a termination payment provision that requires Smithfield to pay $175,000,000.00 to Shuanghui if the Merger Agreement is terminated under certain circumstances. For instance, under one scenario, Smithfield must pay this fee even if it

19

consummates any Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.

43.     The termination fee payable under this provision will make the Company that much more expensive to acquire for potential purchasers, while resulting in a corresponding decline in the amount of consideration payable to Smithfield shareholders.

44.     After a brief "go shop" period, the Merger Agreement also contains a "no solicitation" provision that restricts Smithfield from considering alternative acquisition proposals by, *inter alia*, constraining Smithfield's ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits the Company from soliciting any alternative proposal after a brief defined time period, but permits the Board to consider a "*bona fide written Acquisition Proposal*" if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

45.     Moreover, the Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, Defendants agreed to provide Shuanghui information in order to match any other offer, thus providing Shuanghui access to the unsolicited bidder's financial information and giving Shuanghui the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Shuanghui.

46.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Acquisition and the Proposed Acquisition is the product of the Board's breaches of fiduciary duty, aided and abetted by Shuanghui.

*The Proxy Statement Omits Material Information*

47.     On June 18, 2013, Smithfield filed the Proxy Statement with the SEC pursuant to which Smithfield's Board recommends that Smithfield stockholders vote their shares in favor of

the Merger. As set forth below in detail, the Proxy Statement omits material information about the Proposed Acquisition that must be disclosed to Smithfield's shareholders to enable them to make a fully informed decision. This omitted information, if disclosed, would significantly alter the total mix of information available to them.

48.     It is critical that the shareholders receive complete and accurate information about the Proposed Acquisition. To date, and as set forth in detail below, the Defendants have failed to provide the Company's shareholders with that information.

A.     **The Proxy Statement Omits Material Information About the Process and Events Leading Up to the Execution of the Merger Agreement**.

    a.     The Proxy Statement fails to disclose the Board's or Barclays' consideration the March 7, 2013 letter from Continental Grain letter, including whether or not Barclays or another finical advisor performed a break-up analysis, how recently such an analysis, if ever, had been performed, what parties had been contacted regarding a potential sale of Smithfield's various operations and what parties, how many parties, and how recently parties had contacted Smithfield regarding acquiring all or a part of Smithfield's operations.

    b.     The Proxy should disclose how many years Smithfield and Shuanghui have had a working relationship including the details of that relationship.

    c.     The Proxy should disclose if the March 21, 2013 Shuanghui offer was the first such offer Smithfield had received from Shuanghui to acquire the Company as well as if Smithfield had solicited offers to sell the entirety of the Company in the recent past.

    d.     The Proxy should disclose how the volatility of the hog production business uniquely precludes a sale of Smithfield to a private equity firm as well as what characteristics of Smithfield's capital structure presents unique difficulties to the acquisition of Smithfield by a private equity firm.

    e.     The Proxy should disclose the specific services Barclays previously provided to Shuanghui, and if Barclays has no prior relationship with Shuanghui, the Proxy Statement should say so.

    f.     The Proxy should disclose the nature of the "covenant to take actions required to obtain" CFIUS approval including, but not limited to, what specific actions Shuanghui is required to take.

21

g.      The Proxy should disclose why the Company and the Company's financial advisory did not perform a market check for a sale of the Company or subject the Company to an auction rather than accept a go-shop provision.

h.      The Proxy should disclose the fact that Smithfield and Shuanghui have been discussion a potential deal going back to 2009.

i.      The Proxy should disclose the Company's efforts starting in January 2013 to complete a "potentially significant acquisition of a large business in the packaged meats sector" including the impact such a deal would have on merger discussions with Shuanghui.

j.      The Proxy should disclose the specific reasons why Smithfield's value justified a higher offer price by Parent that were relayed by Barclays to Morgan Stanley in and around April 4, 2013.

k.      The Proxy should disclose the specific the specifics regarding its concerns about the execution of the deal because of "cross-jurisdictional enforcement issues" and other risks associated with regulatory approval.

l.      The Proxy should disclose all efforts made with Company B to determine whether an agreement could be reached that would not be executed or announced prior to June 13, 2013 but that would provide satisfaction of completion to the Smithfield Board.

m.      The Proxy should disclose whether the Board requested that Barclays prepare a sum of the parts analysis regarding the Company and, if so, the analysis must be disclosed.

### B.      The Proxy Fails to Disclose Certain Management Financial Projections

49.      The Proxy states that Smithfield made available to Barclays certain financial projections prepared by management of the Company for the fiscal years 2013-2017. Barclays used these projections in its analyses, including its *Discounted Cash Flows Analysis*. The Proxy fails to disclose the financial projections for fiscal years 2013-2017 for: (a) interest; (b) taxes (or tax rate); (c) depreciation; (d) amortization (e) stock-based compensation; and (f) changes in net working capital. These omissions are material because without this information, Smithfield's public shareholders do not have sufficient information to evaluate the future prospects of the

Company and to evaluate whether the merger provides adequate consideration for their shares of Smithfield common stock.

### C. The Proxy Fails to Disclose Sufficient Details Concerning the Fairness Opinion by Barclays.

50.     The Proxy Statement also omits material information with respect to the financial matters disclosed in therein, including the analyses conducted by Smithfield's financial advisor, Barclays.

51.     With respect to Barclays, in rendering its fairness opinion, the Proxy Statement indicates Barclays' position that "Based upon and subject to the foregoing, we are of the opinion as of the date hereof that, from a financial point of view, the Consideration to be offered to the stockholders of the Company in the Proposed Transaction is fair to such stockholders." Based on the completion of such a narrowly prescribed fairness opinion, as set forth herein, the Proxy Statement fails to provide adequate information to evaluate both the deal and Barclays' analysis thereof as follows:

a.     *Selected Precedent Transaction Analysis (pages 44-45)*

The Proxy fails to disclose material details concerning the analysis that Barclays performed in connection with the *Selected Precedent Transaction Analysis*:

i.     The Proxy fails to disclose the actual Enterprise Value observed for each of the selected transactions. This omission is material because without this information, Smithfield's public shareholders are unable to fully understand the analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to vote in favor of the Merger.

ii.     The Proxy fails to disclose the purchase consideration (cash, stock, or a combination of the two) for each of the selected transactions, and the type of transaction (whether public or private) for each of the selected transactions. These omissions are material because without this information, Smithfield's public shareholders are unable to fully understand the analysis and, thus, are unable to

determine what weight, if any, to place on the fairness opinion in
determining whether to vote in favor of the Merger.

iii.   The Proxy fails to disclose the individually observed metrics and
multiples for each of the selected transactions, including
Transaction Price to Last 12 Months EBITDA.

iv.   The Proxy fails to disclose whether any other metrics or multiples
were observed for the selected transactions, other than those
currently listed in the Proxy.  If so, what were those individually
observed metrics and multiples?  This omission is material because
without this information, Smithfield's public shareholders are
unable to fully understand the analysis and, thus, are unable to
determine what weight, if any, to place on the fairness opinion in
determining whether to vote their shares in favor of the Merger.

b.   *Selected Comparable Company Analysis (pages 43-44)*

The Proxy fails to disclose material details concerning the analysis that
Barclays performed in connection with the *Selected Comparable Company
Analysis*:

i.   The Proxy fails to disclose the actual Enterprise Value observed
for each of the selected companies. This omission is material
because without this information, Smithfield's public shareholders
are unable to fully understand the analysis and, thus, are unable to
determine what weight, if any, to place on the fairness opinion in
determining whether to vote in favor of the Merger.

ii.   The Proxy fails to disclose the individually observed metrics and
multiples for each of the selected companies, including:

1.   2013E P/E;
2.   3-Yr. Avg. Proj. P/E;
3.   EV/2013E EBITDA; and
4.   3-Yr. Avg. EV/Proj. EBITDA.

iii.   The Proxy fails to disclose whether any other metrics or multiples
were observed for the comparable companies, other than those
currently listed in the Proxy.  If so, what were those additional
individually observed metrics and multiples?  This omission is
material because without this information, Smithfield's public
shareholders are unable to fully understand the analysis and, thus,
are unable to determine what weight, if any, to place on the
fairness opinion in determining whether to vote in favor of the
Merger.

24

c.   ***Discounted Cash Flows Analysis (pages 45-46)***

The Proxy fails to disclose material details concerning the analysis that Barclays performed in connection with the *Discounted Cash Flows Analysis*:

i.   The Proxy fails to disclose the basis for the selection of terminal perpetuity growth rates of 2.5%-3.5%. This omission is material because without this information, Smithfield's public shareholders are unable to fully understand the analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to tender their shares.

ii.   The Proxy fails to disclose the weighted average cost of capital utilized to arrive at the discount rates used in the analysis.

iii.   The Proxy fails to disclose implied perpetuity growth rates observed from this analysis.

iv.   The Proxy fails to disclose how, if at all, Barclays accounted for the value of NOLs as part of its analysis.

d.   ***Present Value of Future Stock Price Analysis***

i.   The Proxy fails to disclose if the "peer companies in the meat/protein industry" is the same as used in the *Selected Comparable Company Analysis* and whether the current and historical trading multiples are likewise the same:

e.   ***Precedent Premium Paid Analysis***

The Proxy fails to disclose material details concerning the analysis that Barclays performed in connection with the *Precedent Premiums Paid Analysis*:

i.   The Proxy fails to disclose the total Enterprise Value observed for each of the selected transactions. This omission is material because without this information, Smithfield's public shareholders are unable to fully understand the analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to vote in favor of the Merger.

ii.   The Proxy fails to disclose the reasons that Barclays limited its analysis to transactions announced and completed since January 1, 2011. This omission is material because without this information,

> Smithfield's public shareholders are unable to fully understand the
> analysis and, thus, are unable to determine what weight, if any, to
> place on the fairness opinion in determining whether to vote in
> favor of the Merger.

52.     As set forth herein, the Individual Defendants, separately and together, in

connection with the Proposed Acquisition, violated, and are violating, the fiduciary duties they

owe to Plaintiff and the other public shareholders of Smithfield, including their duties of loyalty,

good faith, candor, and due care.  As a result of the Individual Defendants' breaches of fiduciary

duty, the Company's public shareholders will not receive adequate or fair value for their

common stock in the Proposed Acquisition and will be deprived of the ability to make an

informed decision on whether to vote in favor of the Merger Agreement. By reason of the

foregoing, each member of the Class will suffer irreparable injury and damages absent injunctive

relief by this Court.

53.     Plaintiff and other members of the Class have no adequate remedy at law.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action individually and as a class action on behalf of all

holders of Smithfield common stock who are being and will be harmed by the Defendants'

actions, described herein (the "Class").  Excluded from the Class are Defendants and any person,

firm, trust, corporation or other entity related to or affiliated with any Defendant

55.     This action is properly maintainable as a class action because, *inter alia*:

(a)     The Class is so numerous that joinder of all members is impracticable.
Smithfield's stock is publicly traded on the NYSE and upon information
and belief, Plaintiff believes that there are hundreds if not thousands of
holders of such shares.  Moreover, the holders of these shares are
geographically dispersed throughout the United States;

(b)     There are questions of law and fact which are common to the Class
including, *inter alia*: (i) whether the Individual Defendants have breached
their fiduciary duties to plaintiff and the Class by conducting an
unreasonable sales process and agreeing to an acquisition transaction at a

26

price that is inadequate and is not the fair value that could be obtained under the circumstances; (ii) whether the Shuanghui Defendants aided and abetted the Individual Defendants' breaches of fiduciary duty; and (iii) whether the Class is entitled to injunctive relief and/or damages as a result of the wrongful conduct committed by Defendants;

(c)     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  The claims of Plaintiff are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class;

(d)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; and

(e)     Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and, therefore, preliminary and final injunctive relief on behalf of the Class as a whole is appropriate.

## FIRST COUNT

### Breach of Fiduciary Duty against the Individual Defendants

56.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57.     As alleged herein, Defendants have agreed to sell Smithfield for inadequate consideration under the circumstances.  The Individual Defendants are privy to non-public information concerning the Company that the public stock shareholders are not; thus, there exists a fiduciary duty to protect these shareholders and ensure the cash out process entails both fair dealing and a fair price.  Defendants have failed to sufficiently inform themselves of Smithfield's value, or have disregarded the true value of the Company.  Furthermore, the Individual

Defendants have agreed to onerous deal protection devices that discourage any alternate acquirer from coming forward in the face of the knowledge that Shuanghui can block the purchase.

58.     As such, unless the Individual Defendants' conduct is enjoined by the Court, they will continue to breach their fiduciary duties to Plaintiff and the other members of the Class, and will further a process that inhibits the maximization of shareholder value and the disclosure of material information.

59.     Plaintiff and the members of the Class have no adequate remedy at law.

**SECOND COUNT**

**Aiding and Abetting the Board's Breaches of Fiduciary Duty
Against the Shuanghui and Smithfield**

60.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.     Shuanghui and Smithfield knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Acquisition, which, without such aid, would not have occurred.  In connection with discussions regarding the Proposed Acquisition, the Shuanghui Defendants secured certain deal protection provisions which unfairly inhibit the advancement of alternative proposals.  In addition, Shuanghui obtained sensitive non-public information concerning Smithfield' operations and thus had the advantage to acquire the Company at an unfair price.

62.     As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

63.     Plaintiff and the members of the Class have no adequate remedy at law.

## THIRD COUNT

### Violations of Rule 14(a) Promulgated Under The Securities Exchange Act Of 1934

64.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65.     Defendants disseminated the false and misleading Proxy Statement specified above which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

66.     The Proxy Statement violates Rule 14a because it omits material facts necessary to make the statements made not misleading, as set forth in ¶¶ 47-51, *supra*.  If Plaintiff and the other members of the Class were in possession of the facts that have been concealed and omitted by Defendants, Plaintiff and other members of the Class would be materially less likely to vote their shares in favour of the Proposed Acquisition.

67.     In the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement was materially false and misleading and would be relied upon by Smithfield shareholders in determining how to vote their shares in the upcoming vote on the Merger Agreement.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class, and against the Defendants, as follows:

A.     Declaring that this action is properly maintainable as a class action, certifying Plaintiff as Class representative and certifying his counsel as class counsel;

B.     Temporarily and permanently enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition;

C.    To the extent the Proposed Acquisition is consummated before entry of this Court's judgment, rescinding it and setting it aside or awarding rescissory damages;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

Dated: June 21, 2013

LAW OFFICES OF CHRISTIE A. LEARY, P.C.

Christie A. Leary
State Bar I.D. # 46338
3915 Old Lee Highway, Suite 23A
Fairfax, Virginia 22030
Phone:  (703) 359-7111
Facsimile:  (703) 543-5478
Email: Christie.leary@leary-law.com

Counsel for Plaintiff

OF COUNSEL:

**BRODSKY & SMITH, LLC**
Evan J. Smith
Marc L. Ackerman
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
(610) 667-6200